## Commonwealth *v.* Dillen, Appellant.

*Criminal law—Murder—Intention.*

A verdict of guilty of murder of the first degree will be sustained where the evidence tends to show that the two prisoners, in an attempt to break jail, armed themselves with heavy pieces of iron, lay in wait for the turnkey, and when he appeared sprang upon him and struck him heavy blows on the head from which he died about twenty-eight hours afterwards.

*Criminal law—Murder—Money for defense—County commissioners.*

The court has no authority to make an order upon the county commissioners to pay a sum of money to be used in defending a prisoner indicted for murder. All that the court can do is to grant an application for compulsory process for witnesses.

Argued Jan. 3, 1905. Appeals, Nos. 318 and 319, Jan. T., 1904, by defendants, from judgments of O. & T. Centre Co., Aug. T., 1904, No. 45, on verdict of guilty of murder of the first degree in cases of Commonwealth v. William Dillen and Commonwealth v. Ira Green. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Indictment for murder.

On a motion for a new trial LOVE, P. J., filed an opinion which was in part as follows:

It is also assigned as a reason that the court erred in not making an immediate order upon the application of Clement Dale, Esq., one of the counsel for defendants, for process and means to enable defendants to prepare their defense. The application was for an order to be made upon the commissioners to pay a sum of money. We had no authority to make such an order. There was no application made by Mr. Dale for compulsory process for witnesses. Had there been it would have been granted at once. When the application was made we suggested that he ascertain who and what witnesses he wanted to subpœna and we would grant process, and also suggested that the commissioners agree to allow a reasonable sum to aid the defendants in procuring witnesses and preparing their defense. Immediately after their arrest we saw the commissioners' counsel and suggested to him that he have the commissioners communicate with the prisoners and see if they had coun-

sel, or to see if they had any choice of counsel to make, and we would assign such counsel to take charge of the defense. They made no choice, and the court assigned H. C. Quigley, Esq., to look after their defense, two or three weeks before court convened.   Later on Clement Dale, Esq., and Hon. A. O. Furst were called into the case by relatives of the prisoners. No compulsory process for witnesses was applied for until after court convened and a day or so before the cause was called for trial.   We are not persuaded that the court erred in that matter.

The facts in the case were confined to a narrow compass and to no great extent in dispute.  It was not denied that the prisoners concocted a plan to escape jail for themselves and other prisoners, which involved the commission of a crime.   The evening the crime was committed, the prisoners, having a couple of days before procured what might well be termed dangerous or deadly instruments, got out of their cell, and, with the instruments, concealed themselves in the bathroom, not far from the main entrance into the prison department of the jail.   They knew that no one was present or about the jail but the turnkey, Jerry Condo.   Dillen removed his shoes from his feet so as to avoid making a noise when they were to make the assault upon the deceased.   They evidently were determined to overcome all obstacles in the way of their plan of escape.

They lay in wait in the bathroom for three quarters of an hour before the turnkey entered.  Just after he entered and locked the door behind him, and, just as he had started upstairs, leading to the cells above to be locked, they came out of the bathroom and Dillen dealt him a heavy blow with a heavy iron, ⊤-shaped, and Green jumped up the stairs above him and began to batter him on the head with a piece of iron about a foot in length, one and a half inches wide and one half inch thick, striking him some eight or nine times.   The blows resulted in his death, he dying in about twenty-eight hours after the beating.

Who were the prisoners waiting for, armed as they were with the dangerous instruments?   Had they determined to overcome the principal object that would prevent their escape, even to the taking of life?   It is true they testified that they

did not intend to kill. Their testimony went to the jury without the court even calling the attention of the jury to the fact that in considering the testimony of the defendants they, in considering it, should regard the interest they had in the result of the trial. The facts as above stated were practically undisputed. That the instruments were of a dangerous and deadly character is clear; that they were deliberately procured by the prisoners, and that they laid in wait until an opportune time presented itself to use them upon the deceased; that Dillen, stealing upon the turnkey in his stocking feet, struck the first blow. That they acted in concert in the consummation of their criminal purpose is clear.

That the beating on the head with a dangerous instrument was designedly done, and the blows were rained upon a vital part of the body, with said instrument, with a manifest purpose to so use it that the use of it resulted in death. We left the question of their intent to kill fairly to the jury under the evidence, and said that if the act was done deliberately, premeditatedly and a dangerous instrument was used upon a vital part of the body with a manifest purpose so to use it, and that it was likely to produce death, then the law presumes they intended the natural consequences of their own act. The defendants admitted that they were guilty of murder of the second degree. The only question was really whether or not there was an intent to take life; we submitted the question fairly and fully under the evidence.

Verdict of guilty of murder in the first degree, upon which judgment of sentence was passed.

*Errors assigned* were, among others, in refusing order on county commissioners, and various instructions.

*A. O. Furst,* with him *H. C. Quigley* and *Clement Dale,* for appellant.

*N. B. Spangler,* district attorney, and *E. R. Chambers,* with them *Ellis L. Orvis,* for appellee.

PER CURIAM, January 23, 1905:
The evidence in these cases does not raise the slightest doubt

about the guilt of the appellants, or the degree of it, the fairness of their trial, or the correctness of the rulings of the trial judge on the law as applicable to the evidence.

The specifications of error are all of them immaterial and most of them frivolous. So far as the points raised would justify notice they are sufficiently discussed in the opinion of the court below refusing a new trial.

The judgments are affirmed and the records remitted for purpose of execution.